**UNITED STATES of America**
**v.**
**John Heffron SISSON, Jr.**
**Crim. No. 68-237.**

United States District Court
D. Massachusetts.
Nov. 26, 1968.
Order Dec. 3, 1968.

See also D.C., 294 F.Supp. 511, 520.

Paul F. Markham, U. S. Atty., and John Wall, Asst. U. S. Atty., Boston, Mass., for the United States.

John G. S. Flym, Boston, Mass., for defendant.

## OPINION

WYZANSKI, Chief Judge.

Defendant construes his motion to dismiss the indictment as including a contention that he is entitled to have the indictment dismissed on the ground that he is being ordered to fight in a genocidal war.

The issue of defendant's standing to raise the genocidal question and the issue whether the question is a question not within this Court's jurisdiction resemble the issues already considered by this Court in denying defendant's motion to dismiss the indictment on the ground that defendant has been ordered to fight in a conflict as to which Congress has not declared war. However, there are differences between the problems which the earlier motion presented and the ones now raised.

For argument's sake one may assume that a conscript has a standing to object to induction in a war declared contrary to a binding international obligation in the form of a treaty, in the form of membership in an international organization, or otherwise. One may even assume that a conscript may similarly object to being inducted to fight in a war the openly declared purpose of which is to wipe out a nation and drive its people into the sea. Conceivably, in the two situations just described, the conscript would have a standing to raise the issue and the court would be faced with a problem which was not purely a political question, but indeed fell within judicial competence.

The issue now tendered by this defendant is unlike either of the two cases just mentioned. At its strongest, the defendant's case is that a survey of the military operations in Vietnam would lead a disinterested tribunal to conclude that the laws of war have been violated and that, contrary to international obligations, express and implied, in treaty and in custom, the United States has resorted to barbaric methods of war, including genocide.

■ If the situation were as defendant contends, the facts would surely be difficult to ascertain so long as the conflict continues, so long as the United States government has reasons not to disclose all its military operations, and so long as a court was primarily dependent upon compliance by American military and civilian officials with its judicial orders. It should be remembered that the tribunal at Nuremberg, probably because it had a Russian judge, was unable to face up to the problems tendered by the Katyn massacres. Moreover, neither at Nuremberg nor at Tokyo, tribunals upon which an American judge sat, was there any attempt to resolve the problems raised by the nuclear bombing of Hiroshima and Nagasaki. It is inherent in a tribunal composed partly of judges drawn from the alleged offending nation that a wholly disinterested judgment is most unlikely to be achieved. With effort, self-discipline, and judicial training, men may transcend their personal bias, but few there are who in international disputes of magnitude are capable of entirely disregarding their political allegiance and acting solely with respect to legal considerations and ethical imperatives. If during hostilities a trustworthy, credible international judgment is to be rendered with respect to alleged national misconduct in war, representatives of the supposed offender must not sit in judgment upon the nation. An analogous path of reasoning must lead one to conclude that a domestic tribunal is entirely unfit to adjudicate the question whether there has been a violation of international law during a war by the very nation which created, manned, and compensated the tribunal seized of the case.

■ Because a domestic tribunal is incapable of eliciting the facts during a war, and because it is probably incapable of exercising a disinterested judg-

ment which would command the confidence of sound judicial opinion, this Court holds that the defendant has tendered an issue which involves a so-called political question not within the jurisdiction of this Court. Cf. United States v. Mitchell, 369 F.2d 323 (2d Cir.).

The motion to dismiss the indictment is again denied.

### ORDER

This formal and binding order is a response to defendant's counsel's informal letter, dated November 27, 1968.

1. The Court declines to modify its opinion of November 26. As is plain from the opinion as a whole, the word "genocide" as used therein has not primarily a narrow technical significance but relates to the method of eliminating a population by "barbaric methods." Defendant's earlier brief invited a broad opinion covering the many supposed methods asserted to have been used by the United States in conducting the Vietnam war.

2. Defendant indicates that he "proposes to offer evidence bearing on whether Congress indeed has authorized the Vietnam war." Such a proffer is by this Order formally rejected, subject, *as is every provision of this Order*, to defendant's automatically saved exceptions. First, the offer is precluded by this Court's opinion of November 25. Second, the matter of Congressional action or inaction is not a fit subject of "evidence"; it is, like a statute or rule or the absence of such, a subject to which the attention of a judge is properly drawn by brief or argument, rather than by testimony to be submitted to the trier of fact.

3. Defendant states he intends to "introduce evidence showing that the Vietnam war violates binding international obligations in the form of a treaty, membership in an international organization, or otherwise." Before announcing its ruling, this Court distinguishes two types of alleged violation. (1) An international treaty might forbid a particular type of domestic statute or rule. For example, a treaty between the United States and a foreign power might forbid the United States to collect tolls for the use of a certain canal. If in the face of the treaty, Congress enacted a statute exacting tolls from a shipowner using that canal, and a collector proceeded to collect such tolls from an unwilling shipowner, he could sue to recover the amount from the collector, and the Court would entertain jurisdiction, within its authorized limits, to hear the case and to determine if the collection were contrary to the treaty. But, it should be noted that the Court, consistently with what is stated in Paragraph 2 of this Order, would receive with respect to that issue briefs or like arguments referring to the statutes and rules and (except in a case where facts were determinative, as, for example, whether the ship entered the canal before the treaty became effective) would not permit evidence with respect to the supposed conflict to be submitted to the trier of fact. (2) An international treaty might forbid the United States to engage in "the use of force". If it is claimed that the United States is subject to such a treaty, or to any international obligation, which applies to activity in Vietnam and if it is further claimed that that the United States is now engaged in the use of force in Vietnam, the issues sought to be posed are political questions. The reasons for that statement are at least implicit in this Court's opinion of November 26. That is, "a domestic tribunal is incapable of eliciting the facts during a war and * * * it is probably incapable of exercising a disinterested judgment." The question whether there is a "use of force" presents problems of definition and, more significantly, of application to complicated facts, many of which are hidden in the recesses of chancelleries and governmental bureaus of both the United States and foreign countries. Nothing short of an inquiry of a scale loosely comparable to the Nuremberg Trial could fairly uncover the dominant facts. The primary witnesses appropriate for such an

investigation would be not academic persons who have no first-hand observations, but would be participants, authors of and parties to diplomatic and other official documents and correspondence, and officials who had responsibility for action or non-action. At best, the academic experts would be appropriate (not as evidence but as sources of argumentative material) after such primary testimony had been offered. Nothing in defendant's counsel's letter of November 27, 1968 indicates that his tender of evidence would raise an issue of the first type—that is, roughly similar to the example of the canal tolls. Hence this Court rules that it has not received a sufficiently specific suggestion of a question of international law claimed to fall within its jurisdiction, and that what have been proposed are issues raising political questions not within its jurisdiction. This ruling applies to the points listed on pages 9 and 10 of defendant's first Memorandum of Points and Authorities.

4. Defendant states it "will offer evidence to show he reasonably believed the Vietnam war to be illegal." The indictment charges him with wilfully refusing to perform a duty under the Military Selective Service Act of 1967. U.S.C. Title 50 App. § 451 et seq. "Wilfully" as used in the indictment means intentionally, deliberately, voluntarily. If the Government proves defendant intentionally refused to comply with an order of his draft board, in accordance with the statute, to submit to induction, it is not open to defendant to offer as an excuse that he regarded the war as illegal, that is, contrary to either domestic Constitutional law or international law. Whatever may be the availability of the issues of political belief, good faith, and like innocent motivation as defenses to an indictment charging conspiracy, and whatever may be the requirement imposed upon a prosecution in a conspiracy trial to show bad faith or awareness of illegality, and whatever may be in a conspiracy trial the relevance of a contention that the defendants therein were exercising their political rights of free speech which, by virtue of the First Amendment to the Constitution, are not subject to laws made by Congress,—in a prosecution for wilfully refusing to obey an induction order, evidence with respect to belief is admissible only to the extent it bears upon the issue of intent, as distinguished from motive or good faith.

5. Defendant states he will "offer evidence to show that he properly refused to be inducted on the basis of his right of conscience, both statutory and constitutional." That proffer may (or may not) mean that defendant is prepared to prove that he has a religious conscientious objection to the Vietnam war, although he has no such objection to every war. If that is his position, he is entitled to offer at least initially only before the judge (in the absence of the jury) such evidence in order to elicit a ruling whether his evidence tends to support his allegation of fact and then to elicit a ruling whether the First Amendment precludes the Congress from requiring one who has religious conscientious objections to the Vietnam war to respond to the induction order he received. If the Court rules favorably to defendant on the Constitutional issue of law, then both defense and prosecution are entitled to submit to the trier of fact evidence relevant to the question whether defendant indeed is a religious conscientious objector to the Vietnam war.

6. Defendant states he will "offer evidence to show that the Selective Service Act of 1967, and the regulations governing the administration thereof, violate the constitutional requirements of due process." The vagueness of this quotation is an obstacle to a definite ruling. If the meaning is that the text of a section of the statute or of a regulation which has been applied to defendant as one of the steps in connection with the order directing him to submit to induction is in violation of the Fifth Amendment, the appropriate way to present the challenge is by making, (either

before or at the trial, when the statute or regulation is relied upon either by the prosecution or the defense,) an argument addressed to the judge, not to the trier of fact. If the meaning is that defendant alleges that, as a matter of fact, because of some step in the process of adopting a regulation, or because of some, act or omission in applying a statute or regulation, the statute or regulation was applied to him in violation of the Fifth Amendment, then a preliminary disclosure must be made to the judge for his ruling as to the admissibility of the factual evidence and, if the ruling is favorable to defendant, evidence on the point, whether offered by prosecution or defense, may under some circumstances be submitted to the trier of fact.