**David Victor HARRIS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 23116.**

United States Court of Appeals Ninth Circuit.

June 10, 1969.

Francis Heisler (argued), Herbert A. Schwarts, Richard M. Silver, of Heisler & Stewart, Carmel, Cal., for appellant.

F. Steele Langford (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty., Crim. Div., San Francisco, Cal., for appellee.

Before DUNIWAY and CARTER, Circuit Judges, and * JAMESON, District Judge.

JAMESON, District Judge.

Following a jury trial, appellant was convicted of having refused induction into the Armed Forces of the United States, in violation of 50 U.S.C. Appendix

---

* Honorable William J. Jameson, United States Senior District Judge, Billings, Montana, sitting by designation.

§ 462. On this appeal he contends that the trial court erred in (1) denying his motion to dismiss the indictment on the ground that Section 462 is unconstitutional and contrary to the Judeo-Christian principles upon which the country is founded; (2) denying a new trial by reason of the partiality of one of the jurors; (3) supplemental instructions given to the jury shortly before the guilty verdict was returned; (4) denying appellant's motion for acquittal for the Government's failure to prove the essential elements of the offense charged; (5) excluding the testimony of certain witnesses concerning appellant's character and reputation; and (6) its instructions relative to the scope of the issues before the jury.

Pursuant to order of his local draft board, appellant reported for induction at the Armed Forces Examination and Entrance Station in Oakland on January 17, 1968, but refused to submit to induction. When the other inductees entered the induction station, appellant went to a microphone and made a speech in which he expressed his reasons for refusing induction and stated that he did not intend to enter the induction center. He then tore up a piece of paper which he identified as his induction order, after which he left the induction station, inviting everyone present to a pancake breakfast in a park in Berkeley. Appellant testified on cross-examination that on January 17, 1968, he recognized the consequences of his act and that he would be prosecuted "for not having stepped into that induction center" and for tearing up the order of induction.

■ Appellant's first contention that Section 462 is unconstitutional is without merit. The constitutionality of the Selective Service Acts has been upheld and recognized by the Supreme Court in a number of decisions, including United States v. O'Brien, 1968, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672, where the Court said:

"The constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping. Lichter v. United States, 334 U.S. 742, 755–758, [68 S.Ct. 1294, 1301–1303, 92 L.Ed. 1694] (1948); Selective Draft Law Cases, 245 U.S. 366, [38 S. Ct. 159, 62 L.Ed. 349] (1918); see also Ex parte Quirin, 317 U.S. 1, 25–26, [63 S.Ct. 2, 87 L.Ed. 3] (1942). The power of Congress to classify and conscript manpower for military service is 'beyond question.' Lichter v. United States, supra, [334 U.S. at 756, 68 S. Ct. at 1302]; Selective Draft Law Cases, supra. Pursuant to this power, Congress may establish a system of registration for individuals liable for training and service, and may require such individuals within reason to cooperate in the registration system. * * * * " 1

■ In a motion for a new trial, appellant contended that a Mrs. McLeod was not an impartial juror in that she had indicated her bias in selective service cases while being questioned as a prospective juror in another case. It is well settled that in motions assailing the integrity of a jury on the ground of alleged prejudice of a juror the moving party has the burden of establishing the charge by a preponderance of credible evidence.[2] After reviewing a transcript

1. See also United States v. Nugent, 1953, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417; George v. United States, 9 Cir. 1952, 196 F.2d 445, cert. denied 344 U.S. 843, 73 S.Ct. 58, 97 L.Ed. 656; Etcheverry v. United States, 9 Cir. 1963, 320 F.2d 873, cert. denied 375 U.S. 930, 84 S.Ct. 331, 11 L.Ed.2d 263, reh. denied 1964, 375 U.S. 989, 84 S.Ct. 515, 11 L.Ed.2d 476, mot. for 2d reh. denied 376 U.S. 939, 84 S.Ct. 791, 11 L.Ed.2d 660;

United States v. Mitchell, 2 Cir. 1966, 369 F.2d 323, cert. denied 1967, 386 U.S. 972, 87 S.Ct. 1162, 18 L.Ed.2d 132, reh. denied 386 U.S. 1042, 87 S.Ct. 1477, 18 L.Ed.2d 616; Simmons v. United States, 5 Cir. 1969, 406 F.2d 456; Morgan v. Underwood, 5 Cir. 1969, 406 F.2d 1253.

2. See United States ex rel. Darcy v. Handy, 1956, 351 U.S. 454, 76 S.Ct. 965, 100 L.Ed. 1331; Buchalter v. New York,

of the voir dire examination of Mrs. Mc-Leod in the two cases, the trial judge concluded that the charge of prejudice had not been sustained and that Mrs. McLeod had been fair and truthful in her answers during voir dire. We agree that appellant has failed to sustain his contention that Mrs. McLeod was a partial or prejudiced juror.

Appellant next argues that the court's "additional instruction contrary to law coerced the jurors to find the fact as propounded by the judge". The case went to the jury at 12:32 P.M. At various times the jury requested additional instructions and the rereading of certain testimony. About 8:30 P.M. the court received "a series of questions, probably written by different jurors", which he answered in open court. The portion of the supplemental charge which appellant claimed was coercive reads:

"Now, then, that comes back to the questions which have to do essentially with definitions. The meaning of phrases that were used in the instruction, defining specific intent, and these phrases do need, perhaps, clarifying definitions.

"The question was asked: What is meant by bad purpose and the phrase that is used here is: The defendant may be found to act with specific intent where he fails with bad purpose and with full knowledge of the possible consequences to do what the law required. The question is: 'I'm not sure what bad purpose means.' In this context bad purpose can mean acting with the intention to violate the law. In other types of crimes, for instance in the crime of theft, which is an historic crime, and an historic crime much older than this type of offense, we say that offense is done with the intent to steal, to take somebody else's property to assert dominion over. Definitions have been built up in history which de-scribe this kind of conduct and it is this intention to do this act which is a bad purpose. It is the intention to steal the property of another one. That's bad purpose.

"Theft is a specific intent crime and it's not a general intent crime. There are a great many specific intent crimes. You can run through the spectrum of criminal law and most serious offenses require a specific intent. This Universal Military Training & Service Act also requires a specific intent.

"Now, the question for you to determine is, did Mr. Harris, on January 17, when he went to the induction station, knowingly and intentionally refuse to be inducted and did he know what he was doing when he did it. Did he understand what he was doing? Did he understand what he was supposed to do and did he deliberately and wilfully refuse to do it? If he had the comprehension to understand and he refused to do it, then he could have a bad purpose if he refused to do it. He has a right, and it is his privilege, to disagree with the law, but it is not his right or privilege to disobey the law without incurring the consequences of it.

"The next phrase which is involved is: 'Full knowledge of the possible consequences.' You simply have to determine from the facts what Mr. Harris understood. Did he understand he was supposed to be inducted? Did he understand what the notice called for? Did he understandingly refuse to do it knowing that if he did he would be in violation of the laws of the United States. These are the questions to be determined. Again he has a right to disagree with the law and it is his privilege to advocate a change in the law, but he, like the rest of the citizens of this country, is under a duty to obey the law when it comes his turn to do it.

1943, 319 U.S. 427, 63 S.Ct. 1129, 87 L.Ed. 1492; United States v. Provenzano, D.N.J.1965, 240 F.Supp. 393, 408, aff'd.

3 Cir. 1966, 353 F.2d 1011, cert. denied 384 U.S. 905, 86 S.Ct. 1340, 16 L.Ed.2d 358.

"If these terms are confusing they are confusing because they deal with a subject which involves a frame of mind and we can't look into a man's mind and read it, we can only determine what he thought by what he did and what he said and how he acted. By applying our knowledge of the common affairs of life to the facts as we know them we arrive at conclusions. In determining whether or not somebody acted with intent you must always have to do this by some form of circumstantial evidence, so you have to weigh the circumstances to find out if the circumstances support the conclusions which you are asked to reach.

"Now, are there any further questions?"

■ In our opinion this instruction is a correct statement of the applicable law and was not coercive. It was given in response to specific questions raised by various jurors. Appellant complains that the jury returned its verdict approximately 11 minutes after this instruction was given. The jury had been deliberating, however, for approximately eight hours and apparently had resolved the facts, subject to a clarification for some jurors of the legal questions submitted.

■ Nor is there merit in appellant's contention that the Government failed to prove the essential elements of the offense charged. Specific intent could properly be inferred from appellant's actions and statements at the induction center and particularly his own testimony that he recognized the consequences of his act and that he would be prosecuted for his refusal to enter the induction center.

Appellant called as a witness Dr. Robert M. Sanford, Professor of Psychology at Stanford University. This witness was permitted to testify that appellant had a "reputation for extra-

ordinary honesty and conscientiousness and straightforwardness". Objections to further testimony were sustained and an offer of proof submitted. Outside the presence of the jury, the witness testified, inter alia, that draft resistance and protest movements were based on conscientiousness of a high order; that other researchers shared his opinion; and that appellant was acting with conscientiousness, integrity and sincerity.

■ Written statements containing the proposed testimony of two other witnesses were submitted and read by the court. Both statements expressed the views of appellant and witnesses in opposition to war and conscription and their reasons for opposing the draft and attested to the sincerity and conscientiousness of appellant in challenging a law he considered wrong. The court properly held this testimony inadmissible.

■ Appellant's credibility as a witness had not been attacked by the Government by any testimony that appellant's reputation for truth, honesty and veracity was bad. In the absence of such an attack, appellant could not offer proof of good reputation. Nor was there any question that appellant did in fact refuse to submit to induction. This he freely admitted. Under these circumstances evidence of his good moral character "would not be relevant to whether or not he willfully and knowingly violated" his induction order. United States v. Garland, 2 Cir. 1966, 364 F.2d 487, 489, cert. denied 385 U.S. 978, 87 S.Ct. 521, 17 L.Ed.2d 440.[3] In his charge to the jury the trial court properly defined "knowingly" and "willfully" and distinguished "motive" and "intent."

■ Finally, appellant claims error in giving what is designated Government's instruction No. 12 [4] and refusing

3. See also Springer v. United States, 9 Cir. 1945, 148 F.2d 411, 415; United States v. Sisson, D.Mass.1968, 294 F. Supp. 515, 519.

4. Government's instruction No. 12 reads:
    "You are not to concern yourself with the political or moral questions, such as the legality of the war in Viet-

appellant's offered instructions 1 and 2.[5] Appellant argues that instruction No. 12 unnecessarily overemphasized the position taken by the Government. We do not agree. It is a proper statement of the applicable law, and the instructions as a whole were fair to both parties.

■ It was not error to refuse appellant's offered instructions 1 and 2. This is not a case where a recently enacted statute is before the court for the first time and an accused refuses to obey until it has been held valid. As noted supra, the constitutionality of the Selective Service Acts has been upheld in many prior cases.

In support of his offered instruction No. 2, appellant relies upon Keegan v. United States, 1945, 325 U.S. 478, 65 S.Ct. 1203, 89 L.Ed. 1745, and Okamoto v. United States, 10 Cir. 1945, 152 F.2d 905. In both Keegan and Okamoto, the defendants were charged with conspiracy to counsel persons to evade service in the Armed Forces. It is true, there is language in both cases which suggests the propriety of appellant's offered instruc-

tions in certain cases where the constitutionality of a statute has not been determined.[6] This is not such a case. A subsequent decision of the Tenth Circuit, in a factual situation more nearly analogous to that here presented, clarifies the rule in the "counseling" cases and would be equally applicable here. The court said:

"It should be noted that this is not a case where one with innocent motives honestly believing a law to be unconstitutional and, therefore, not obligatory, counseled that the law should not be obeyed and that its command should be resisted until a court should hold it valid.[7] That defense was not raised. Warren testified that he was fully acquainted with the provisions of the Act at the time he counseled and endeavored to persuade Murrah not to register. He knowingly and deliberately violated one of its penal provisions under his asserted philosophy that he had the right to disobey a Federal law which he believed to be detrimental to mankind as a whole.

nam, or the morality of any war or its relationship to the security of the United States, nor are you to concern yourselves with the quality or virtues of our draft laws. In short, as previously stated, the only facts which the Government must prove are that the defendant failed to submit to induction into the Armed Forces after he reported for induction as ordered by his local board and, two, that such omission or failure to submit was wilfully and knowingly done.

"If you find beyond a reasonable doubt from the evidence in this case that the Government proved each of these two elements, that is all that is required. Hence the motive of the defendant is immaterial except insofar as the evidence of motive may aid in determining the state of mind, his state of mind or intent."

5. Instructions 1 and 2, offered by appellant, read:

"[1] One with innocent motives, who honestly believes a law unconstitutional and, therefore, not obligatory, may well refuse to obey it and resist its command, until a court shall have held it valid.

"[2] If you find from the evidence that the defendant here acted with honesty of purpose and innocence of motive in a good faith effort to bring about a test case to determine whether he is exempted under the Selective Service Act, then he may refuse to obey the command of the law until its validity is determined by the courts.

"If you further find that the defendant honestly believed the law to be invalid, then he did not have the specific intent to act willfully and he is entitled to a finding of Not Guilty."

6. In Keegan the Court said in part: "One with innocent motives, who honestly believes a law is unconstitutional and, therefore, not obligatory, may well counsel that the law shall not be obeyed; that its command shall be resisted until a court shall have held it valid, but this is not knowingly counselling, stealthily and by guile, to evade its command." 325 U.S. at 493, 494, 65 S.Ct. at 1209.

7. The court added as footnote: "Cf. Keegan v. United States, 325 U.S. 478, 493, 65 S.Ct. 1203, 89 L.Ed. 1745, and Kiyoshi Okamoto v. United States, 10 Cir., 152 F.2d 905, 907."

A person may not decide for himself whether a law is good or bad and if bad, that he is free to disobey it.

" * * * One may not disobey a law even in the good faith belief that it is unconstitutional and, on that ground, avoid the consequences of his act if the law is within the constitutional power of Congress." Warren v. United States, 1949, 177 F.2d 596, 600, cert. denied 1950, 338 U.S. 947, 70 S.Ct. 485, 94 L.Ed. 584.[8]

Finding no error, we affirm.

---

8. United States v. Rabb, 3 Cir. 1968, 394 F.2d 230, cited in appellant's reply brief, is not in point. The court there held improper a definition of "willful" which included "conduct marked by careless disregard, whether or not one has the right to act". No such instruction was given in this case. On the contrary, the court gave the definition of "willfully" which the court approved in Rabb, and no exceptions were taken to the instruction.