**UNITED STATES of America, Appellee,**

v.

**Joseph Louis SOWUL, Appellant.**

**No. 71–1064.**

United States Court of Appeals, Ninth Circuit.

Aug. 17, 1971.

Philip Hoffman (argued), Beverly Hills, Cal., for appellant.

Elgin Edwards, Asst. U. S. Atty. (argued), Robert L. Meyers, U. S. Atty., David R. Nissen, Chief, Crim. Div., Los Angeles, Cal., for appellee.

Before MERRILL, KILKENNY and TRASK, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant was indicted, tried and convicted in a jury trial of violation of 50 U.S.C.App. § 462, refusing to submit to induction.

### FACTS

After registration with his local board on February 23, 1965, the appellant was classified I–A on January 5, 1967, and given his physical examination on December 8th of the same year. On December 22nd, he was sent a notice of acceptability. On the 26th of the same month, the local board received a letter from appellant's mother stating that she was on welfare and that she was in need of his assistance. On the same day, the board sent appellant a dependency questionnaire which was never returned. The board reviewed the file on January 4, 1968, and declined to reopen the classification. On January 13, 1970, the classification was reopened and appellant was again classified I–A. He was then ordered to report for induction on April 28th. On the following day, the local board received a letter from appellant requesting a I–Y classification. On May 13, 1970, the local board was advised that appellant had not reported on April 28th,

as ordered, but had reported on April 29th and at that time refused induction.

### ISSUES

■ (1) In United States v. More, 436 F.2d 938 (9th Cir. 1971) and Harris v. United States, 412 F.2d 384 (9th Cir. 1969), we considered and rejected appellant's present contention that the lower court should have permitted him to raise the defense of a good faith belief in the illegality of his induction.

■ (2) Likewise, his contention that the local board was not properly constituted was considered and rejected by us in United States v. Nix, 437 F.2d 746 (9th Cir. 1971) and United States v. Reeb, 433 F.2d 381 (9th Cir. 1970).

■ (3) The suggestion that the Selective Service Act violates the Ninth Amendment to the Constitution has been rejected by us in United States v. Farrell, 443 F.2d 355 (9th Cir., 1971); United States v. Uhl, 436 F.2d 773 (9th Cir. 1970); and Harris v. United States, supra.

■ Appellant's argument that he was not given a proper preinduction physical examination deserves our considered attention. He says that his examination did not measure up to the regulations in two respects: (a) that the psychiatric examination was not "sufficient", and (b) that he was not given a proper urinalysis.

■■ (a) Absent some highly unusual circumstance, the courts are not permitted to inquire into registrant's physical fitness. United States v. Shunk, 438 F.2d 1204 (9th Cir. 1971). We find no regulation requiring that every inductee be examined by a psychiatrist. Ordinarily, the question of whether a registrant is mentally fit for the Army is a question for the military and the courts will not interfere. Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). There is nothing in the record before us which suggests that the mili-

tary did not follow its usual practice and procedure with respect to the mental examination of appellant. This contention is without merit.

(b) True enough, the Army Regulation [1] provides that the routine analysis include a determination of the specific gravity and a microscopic study of the registrant's urine. In this connection, however, the declared purpose of the Policy Guide for Medical Officers Assigned to Armed Forces Examining and Entrance Stations [USAREC Pam 40–1] reads as follows:

"1. *Purpose.* This pamphlet provides guidance for medical officers assigned to Armed Forces examining and entrance stations (AFEES). Its purpose is to improve the quality of medical examinations performed at AFEES; to increase the efficiency of these stations; to assist in the standardization of procedures; and to reduce the number of recurrent deficiencies and irregularities observed during inspection by inspectors at all levels."

The declared scope is as follows:

"2. *Scope.* This pamphlet is applicable to all personnel assigned to medical sections in the Armed Forces examining and entrance stations. The information contained herein is based upon official directives. Should any conflict arise, the latest directive or change will apply. Medical officers should seek administrative and command guidance from the AFEES commander. Professional guidance can be obtained by contacting the Surgeon, U. S. Army Recruiting Command, Hampton, Virginia."

The guidance requirements [USAREC Pam 40–1, Items 45 through 50, Laboratory Findings, p. 13] with reference to urinalysis provide:

"(1) Item 45a (Urinalysis), Specific Gravity. Complete for ROTC,

---

1. A.R. 40–501, Chapt. 11, Sec. XVII. "Routine urinalysis, to include determination of specific gravity, protein and

sugar, and miscroscopic study will be performed for all examinees."

Army OCS applicants, female ANC, ASNP, and WAC applicants, and otherwise only when indicated."

\* \* \* \* \* \*

"(4) Item 45d, Microscopic. Required for ROTC, Army OCS, female ANC, ASNP, and WAC applicants. If Item 45b is positive, a microscopic examination of the spun down sediment is indicated."

\* \* \* \* \* \*

■ The quoted material makes it crystal clear that the United States Army Recruiting Command, responsible for all examinations, did not interpret the regulation as requiring the tests, the lack of which appellant complains. This administrative interpretation of the regulation is in full support of the testimony of Dr. Jansen, the only witness who testified on the subject.[2] On an issue of whether a regulation is mandatory or discretionary, the administrative interpretation is entitled to great weight. Thorpe v. Housing Authority, 393 U.S. 268, 276, 89 S. Ct. 518, 21 L.Ed.2d 474 (1969); Bowles v. Seminole Rock Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945).

■ Viewed in the light of the administrative interpretation, we hold that the regulation was discretionary, rather than mandatory, and that the specific gravity test and microscopic study were not required.

We have carefully studied appellant's other contentions and find them without merit.

The judgment of the lower court is affirmed.

2. "THE WITNESS: All I can tell you is that under the direction of Colonel Sclaasir, who is the Surgeon of the United States Army Recruiting Command, we are directed to—a satisfactory examination of the urine just deals with a urinalysis involving checking for protein or albumin and sugar. If the applicant gives some history of, say, blood in his urine or recurrent urinary tract infections, then that is taken into consideration and at the discretion of the Military medical officer a miscroscopic examination can be ordered, but it is by no means done routinely on everybody that goes through here, and that is under the direction of Colonel Sclaasir the surgeon at USARC." [T.R., p. 104].