**UNITED STATES of America, Plaintiff,**

v.

**Jon Charles GORDER, Defendant.**

**No. 4–69 CR. 73.**

United States District Court, D. Minnesota, Fourth Division.

Oct. 4, 1971.

Robert G. Renner, U. S. Atty., by Neal J. Shapiro, Minneapolis, Minn., for plaintiff.

Johnson & Eastlund, by Mark T. Solstad, Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

In this criminal prosecution for alleged failure to submit to induction into the Armed Forces of the United States as charged in an indictment returned October 16, 1969, defendant originally demanded a jury trial. Court and counsel conferred in chambers prior to the opening of the trial, the substance of which conference later was read into the record in open court in the presence of the defendant. Defendant's counsel stated that he intended to present two defenses: first, that defendant's local draft board did not follow the requisite order of call as prescribed by regulation, 32 C.F.R. § 1631.7, and second, that defendant was not wilfully in disobedience because he believed that he was a conscientious objector and therefore not required to submit to induction. The United States Attorney stated, and this fact later appeared in the evidence, that defendant had never applied to his local board at any time for a classification as a conscientious objector.

The court ruled in advance of the opening of the trial and advised defendant's counsel and defendant personally that any evidence as to either of these defenses would not be submitted nor presented to the jury, on the grounds that the first defense presents purely a question of law for decision by the court and not a fact question for submission to the jury, and that the second claimed defense of conscientious objection is not a defense under such cases as United States v. Seeverts, 428 F.2d 467 (8th Cir. 1970). The *Seeverts* case cites numerous decisions holding that a claim to be a conscientious objector offered at the trial in a criminal case affords no basis for attack upon the validity of the order to report for induction. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States

v. Brooks, 422 F.2d 365 (5th Cir. 1970); Carson v. United States, 411 F.2d 631 (5th Cir.), cert. denied 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969); United States v. Powers, 413 F.2d 834 (1st Cir.), cert. denied 396 U.S. 923, 90 S. Ct. 256, 24 L.Ed.2d 205 (1969); Ashton v. United States, 404 F.2d 95 (8th Cir. 1968), cert. denied 394 U.S. 960, 89 S. Ct. 1308, 22 L.Ed.2d 561 (1969).

After a review and statement of the court's prospective rulings on the record in open court, defense counsel indicated that defendant wished to waive a jury trial. Defendant was thereupon advised of his rights and questioned at some length in the presence of the court by the United States Attorney and by the court itself. He then executed a written waiver of jury trial.

It appears that defendant originally registered with Local Draft Board No. 28, Hennepin County, Minnesota September 13, 1966. He received student deferments until January 14, 1969 when he was classified I–A. He took no appeal from this classification and, as previously indicated, neither in his classification questionnaire under series VIII nor by any other means did defendant notify or attempt to notify the board that he claimed to be a conscientious objector. He was found medically acceptable in due course, and his induction order was entered April 7, 1969, requiring him to report for induction May 5, 1969. He did not submit to induction and twice refused to take the symbolic step forward, the second time after being counselled as to the consequences of his act and the maximum penalties provided by the criminal statute. This indictment followed. The court finds that defendant refused wilfully and knowingly to submit to induction and as such is guilty of the criminal offense charged in the indictment.

In support of the first defense, defendant subpoenaed and there were introduced into evidence three files of registrants other than himself registered with Local Board No. 28, all of whom were classified I–A on January 14, 1969 as was defendant. His effort was to show that he was inducted prior to these three specific registrants. It appears that the *first*, (def.'s ex. 1) one Hupp, at the time of the receipt of his notice of induction was pursuing academic study and was then actively attending school and so received a statutory deferment of I–S–C under 50 U.S.C.A. App. § 456(i) (2). The Selective Service supervisor for a number of boards in Hennepin County testified that though the original Hupp file had been destroyed by vandalism in the Selective Service office and that its reproduction was not complete, a notice to report for induction had to have been issued prior to July 15, 1969 when this registrant's I–S–C classification was terminated.

A second registrant, one Keller (def.'s ex. 2) subsequently was found physically unacceptable and was classified I–Y May 13, 1969, his original notice to report for induction having been mailed March 13, 1969. Keller in any event was ordered originally to report for induction prior to the date of defendant's induction date.

■ One Riley (def.'s ex. 3) also was medically rejected, finally on July 29, 1969. The court need not consider the question of burden of proof once a defense such as this is raised, for the court is satisfied there is no showing of any material deviation from the applicable order of call which was testified to as the oldest first under age 26 to age 19 of those acceptable and available for induction. Accordingly, the court finds as a matter of law that this defense is not established.

■ The court permitted the defendant in support of his *second* defense to testify after receiving in-court warnings of his constitutional rights. The court stated such testimony would be deemed an offer of proof. Defendant testified at length concerning his beliefs which he says are not religiously based but reside in his own conscience. He objects to war, the army, the idea of an army and

cannot find it within himself to become a part of such. He further testified that an army is formed for the sole purpose of spreading destruction, is controlled by someone else, is based on violence and is immoral, and the idea of taking another life is abhorrent to him. As stated above, the issue clearly is settled that a defense of conscientious objection cannot be asserted as a defense at the trial, particularly where no claim was ever asserted before the local board. Under the old concept that the court and/or jury is not to sit as a super draft board determining such questions *de novo*, a basis in fact for a I–A classification obviously did exist. United States v. Murray, 321 F.Supp. 1012 (D. Minn.1971); United States v. Seeverts, supra; United States v. Watson, 442 F.2d 1273 (8th Cir. 1971). The order to report was therefore valid, and the defendant's failure to submit to induction cannot be excused by his never-before stated claim to conscientious objector status. *A fortiori*, if the defense cannot be raised, evidence tending to prove such a defense is inadmissible.

In relation to his second defense, defendant also contended that he was not offering the testimony as to conscientious objection as a direct defense but rather to show the defendant did not have the wilfulness required by the statute; i. e., he did not have a bad motive. While in the court's view the issue is disposed of by cases cited above, this contention of defendant has been faced directly by other courts. For example, in United States v. Boardman, 419 F.2d 110 (1st Cir. 1969), the court stated:

"The trial court's charge in this case properly explained the mental element required for conviction under 50 U.S.C. App. § 462. To sustain conviction under this statute, the government must show awareness of legal obligation and a deliberate purpose not to.comply. United States v. Rabb, 394 F.2d 230, 233 (3d Cir. 1968). Evidence concerning defendant's good moral character or the reasonableness of his political beliefs does not bear on whether he knowingly and deliberately failed to report for alternate service. Harris v. United States, 412 F.2d 384, 388 (9th Cir. 1969); United States v. Sisson, 294 F.Supp. 515, 519 (D.Mass.1968)." Id. at 114.

The jury instruction approved by the *Boardman* court stated:

"Motive is that which tempts, induces or moves a person to commit a crime. Intent is the purpose or mental state with which the person does the act. Now, members of the jury, motive, no matter how laudable or praiseworthy that motive may be, cannot negative a specificate intent to commit a crime. * * * Where a person has a specific intent to bring about a result which the law seeks to prevent, what induces him to act, his motive, is immaterial." Id. at 113–114.

The *Boardman* distinction between motive and intent is apt for the instant case. The file and testimony are clear that the defendant knew he had been ordered to report for induction, was advised of the penalties for refusal to submit, and yet did so refuse knowingly and wilfully.

Defendant's counsel objected strenuously to the admission into evidence of a letter contained in defendant's selective service cover sheet file, (Govt. Ex. 1) written May 5, 1969 by an army captain at the Induction Center to the United States District Attorney setting forth the facts of defendant's appearance at the induction center, his refusal to submit to induction and the advice given him as to the consequences that might follow his acts. He also objected to the Delivery List (Govt's Ex. 2) dated the same date showing after the name Gorder, Jon, "Refused Induction". He claims these matters are hearsay and in a criminal case should not be evidence of his wilful failure to submit to induction without calling the authors as witnesses. When defendant took the witness stand to testify in his own defense as to lack of wilfulness be-

cause of his conscientious objector beliefs, he of course admitted all this on cross-examination. Since this was adduced in connection with an offer of proof which the court rejected, however, and since defendant made a motion to dismiss at the close of the government's case, such may be and is disregarded for purposes of ruling on defendant's objections.

The court believes the entire file was admissible into evidence including the objected to items.

Rule 27 of the Federal Rules of Criminal Procedure simply reads:

"An official record or an entry therein or the lack of such a record or entry may be proved in the same manner as in civil actions."

There is here no question of lack of foundation, i. e., that the exhibits are genuine and complete. 18 U.S.C. § 3491 apparently refers only to foreign documents, but it cross references itself to 28 U.S.C. § 1732, the statutory enactment of the old "shop book rule". Clearly the objectionable items were made "in the regular course of business" and contemporaneously, in the course of duty and in accordance with the other requirements of that statute. 28 U.S.C. § 1733 refers more specifically to a particular type of government books or records. The proposed Rules of Evidence for the Federal courts, applying to both civil and criminal proceedings and in effect restating the rules of evidence as evolved over the years, see 51 F.R.D. 315, 420 (1971) reading as follows:

"(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances indicate lack of trustworthiness."

"(8) Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law, or (c) in civil cases and against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

Nothing in defendant's file, in the evidence or in the court's own experience indicates "lack of trustworthiness" such as to warrant sustaining defendant's objection. The admission into evidence of records is and always has been an exception to the hearsay rule; that is to say records frequently contain hearsay material, the weight and probative value of which is for the trier of fact, but the trustworthiness of which except in unusual situations entitles them to admissibility into evidence.

A separate order for judgment has been entered.