**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Mark Craig ZANNINI, Defendant-
Appellant.**

**No. 73–2358.**

United States Court of Appeals,
Ninth Circuit.

Jan. 25, 1974.

Jerome Fishkin (argued), San Francisco, Cal., for defendant-appellant.

James R. Browning, Jr., U. S. Atty., Chester G. Moore III, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

## OPINION

Before ELY and WRIGHT, Circuit Judges, and JAMESON,[*] District Judge.

JAMESON, District Judge:

Appellant was convicted in a jury-waived trial of refusal to submit to induction into the Armed Forces in violation of 50 U.S.C. App. § 462(a).

Appellant registered for the draft on November 15, 1966. He received a preinduction physical on February 9, 1968 and was found acceptable for induction. He was last classified 1–A on June 17, 1970 and did not appeal this classification. On September 11, 1970 appellant was ordered to report for induction on September 23, 1970. He failed to report. On January 22, 1971 he was handed a "continuing duty" order to report on February 1, 1971. Again he failed to report.[1] A third induction order was mailed to appellant on October 13, 1971, with a reporting date of November 16, 1971.

On November 15, 1971 appellant completed and signed a "Statement of Personal History", in which he answered in the affirmative the following questions:

"Do you have a history of mental or nervous disorders?

"Are you now or have you ever been addicted to the use of habit forming drugs such as narcotics or barbiturates?"

In explanation of his answer appellant stated:

"I've had depressions and intense feelings of insecurity for most of my life. They have kept me from functioning to the full extent of my mental and physical potentials. In the last couple of years I have used barbiturates to ease these feelings, although they have not helped my ability to function (that is—pursue my talents or, earn my living). Dr. Reider advised me to enter therapy at Mt. Zion Hospital, but I declined believing that it would not relieve my anxiety and depressions."

Appellant reported to the Armed Forces Entrance and Examining Station (AFEES) on November 16, 1971. In his "Report of Medical History", completed as a part of his medical examination, appellant checked in the affirmative the items "Depression or excessive

---

[*] Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

1. Appellant's Selective Service file contains a "Report of Information" signed by appellant on September 1, 1971 at a "personal visit" reading, "Was contacted by Mr. Walters of F.B.I. concerning failure to report for induction September 23, 1970. Would like to submit to induction physical examination".

worry" and "Nervous trouble of any sort".[2] In response to the question "Have you consulted or been treated by clinics, physicians, healers, or other practitioners within the past 5 years for other than minor illnesses?" appellant answered: "Consulted Dr. Norman Reider for advice on severe depressions."

Appellant presented to the AFEES examining physician, Dr. N. J. Hawthorne, a letter dated May 21, 1971 from Dr. Norman Reider, a psychiatrist. This letter, which was not presented to appellant's local board, recites that appellant "came to see" Dr. Reider on April 8, 1971 "for a psychiatric evaluation in regard to his draft status". Dr. Reider's report of his examination reads:

> "Examination shows that since childhood he has been in a chronic neurotic depression. He has been withdrawn, sleeps a lot, can't get along with other people. Three years ago the loss of a girl-friend deepened his apathetic depression. Since he needs to be left alone and cannot stand authority, he could not stand the idea of the Army and, with an apathetic attitude, therefore refused to report for induction.

> "Part of his depression manifests itself in his mental block on doing things. In the past, if he didn't feel like going to school, he wouldn't and then one day of absence would stretch into a week. He had considered the need for psychiatric help, but in typical depressive attitude, he didn't think he'd get anything out of it. He obsesses over decisions and can't make up his mind to do anything. When asked if he considered himself a CO, he replied that he didn't believe in anything. Therefore he couldn't consider himself anything.

"Impression: Depressive Neurosis, chronic, severe, with schizophrenic features.

"I believe that Zannini is unsuitable for service in the Army, and has always been. He should be disqualified under AR 40–501. I further believe that an adequate psychiatric examination at the time of his physical would have revealed his unsuitability."

In his "Report of Medical Examination" Dr. Hawthorne made this notation: "Letter 21 May 71 noted draft eval. only no other NP Rx"—an abbreviation for "draft evaluation only, no other neuro-psychiatric treatment". In a space for the physician's summary on the "Report of Medical History" Dr. Hawthorne wrote, *inter alia,* "depression /see letter/ N C D [not considered disqualifying]". The report of the examining physician was reviewed and approved by the medical officer.

After being processed for induction on November 16 appellant "was determined fully qualified for induction in all respects". He refused to submit to induction.

Appellant testified at the trial that Dr. Hawthorne asked him whether he had ever been hospitalized or treated but asked no further questions regarding the letter from Dr. Reider. Appellant stated on cross-examination that he had never undergone any psychiatric treatment following his examination by Dr. Reider.[3] It was stipulated at the trial that appellant did not receive a psychiatric examination at AFEES and that his local board did not consider Dr. Reider's letter in the classification process.

Appellant makes two related contentions: (1) that he "was medically unqualified for induction into the armed

---

2. Appellant had checked both of these in the negative in his Report of Medical History at the time of his pre-induction physical on February 9, 1968.

3. As shown by his medical history appellant's one consultation with Dr. Reider was the only time he had consulted a physician or other practitioner within five years of his examination on November 16, 1971. In his medical history on February 8, 1968 the only reference to consultation or treatment within five years of that date was a statement that he had seen a physician "about numbness in legs".

forces"; and (2) that "AFEES failed to evaluate [his] psychiatric claim properly".

At the outset we recognize that "Absent some highly unusual circumstance, the courts are not permitted to inquire into [a] registrant's physical fitness" and that "Ordinarily, the question of whether a registrant is mentally fit for the Army is a question for the military and the courts will not interfere." United States v. Sowul, 447 F.2d 1103, 1105 (9 Cir. 1971), cert. denied, 404 U.S. 1023, 92 S.Ct. 698, 30 L.Ed.2d 672 (1972). The scope of judicial review "is the narrowest known to the law. * * * AFEES determines the medical acceptability of a registrant * * * and federal courts must be particularly cautious in reviewing basis in fact questions of a medical nature." United States v. Wilson, 478 F.2d 475, 477 (9 Cir. 1973). On the other hand, "if the record indicates arbitrary action by AFEES or a deficiency in prescribed procedures that results in prejudice to the registrant, this court can take corrective action." *Id.*

With these principles in mind we turn to the applicable regulations. Army Regulation 40–501, Section XVI reads in pertinent part:

"2–33. Psychoneuroses

"The causes for rejection for appointment, enlistment, and induction are—

"a. *History of a psychoneurotic reaction* which caused—

"(1) Hospitalization.

"(2) Prolonged care by a physician.

"(3) Loss of time from normal pursuits for repeated periods even if of brief duration, or

"(4) Symptoms or behavior of a repeated nature which impaired school or work efficiency.

"b. *History of a brief psychoneurotic reaction* or nervous disturbance within the preceding 12 months which was sufficiently severe to require

medical attention or absence from work or school for a brief period (maximum of 7 days)."

Army Regulation 601–270–4–20–h–(1) provides in pertinent part:

"(b) *Psychiatric evaluation.* A specific psychiatric evaluation will be made by the Chief, Medical Examining Section, whenever the examining physician has reason to question the examinee's emotional, social, or intellectual adequacy for military service. Such examinees may be referred to a psychiatrist when the services of such a specialist are available within a a period of 2 days. When the services of a psychiatrist cannot be made available within 2 days, or when such referral is not deemed necessary, the medical officer will make the final psychiatric evaluation * * *."

Appellant argues that he presented a *prima facie* case for disqualification under subsections a(3), (4) and (b) of the regulation relating to "Psychoneuroses" and that this compelled a psychiatric evaluation. The Government argues, and the district court held, that the evaluation was discretionary, and that this discretion was properly exercised when the examining physician found "that Dr. Reider's letter did not establish a psychoneurotic disqualification".

It is of course clear that a psychiatric evaluation is not required of every draft registrant; nor would the registrant's request and his affirmative answers to the questions relating to depression and nervous disorders in themselves require a specific psychiatric evaluation. We have before us the narrower question of whether the evaluation was required by reason of Dr. Reider's letter.

Dr. Reider, a psychiatrist, made a diagnosis of "Depressive Neurosis, chronic, severe, with schizophrenic features". He believed appellant was "unsuitable for service in the Army" and that, "He should be disqualified under AR 40–501". It is clear that Dr. Reider was familiar with the applicable regulation and expressed a positive opinion that ap-

pellant should be disqualified under that regulation.[4]

■■ The Army Regulation requires a specific psychiatric evaluation whenever the examining physician has "reason to question" an examinee's emotional adequacy for military service. The natural import of the phrase "reason to question" does not suggest that an examinee must *establish* a psychiatric disqualification before being granted a psychiatric evaluation. The Regulation itself implies that the purpose of granting an evaluation is to determine whether a psychiatric disqualification is justified. If an examinee is required to establish a disqualification before being granted an evaluation there would be no need for the evaluation. We hold that the requisite "reason to question" is supplied when an examinee presents a *prima facie* case, that is, facts which, if true, would justify the grant of a psychiatric disqualification. See United States v. Allen, 459 F.2d 563, 565 (9 Cir. 1972). Thus, the critical issue is whether appellant presented a *prima facie* case for psychiatric disqualification.[5]

In arguing that the Reider letter did not afford a basis for a *prima facie*

claim of psychiatric disqualification, the Government relies on our decision in United States v. Thrower, 483 F.2d 283 (9 Cir. 1973), where the court had under consideration a comparable letter from a psychiatrist consulted by the registrant. *Thrower*, however, is distinguishable. Thrower had been granted a neuro-psychiatric examination by AFEES.[6] The issue in *Thrower* was not, as here, whether the psychiatrist's letter presented a *prima facie* case for psychiatric disqualification, requiring a specific psychiatric evaluation, but whether the letter "constituted new information and required a review of that letter by the local board". 483 F.2d at 284. *Thrower* simply held that all of the defects alleged in the psychiatrist's letter "had been considered and evaluated previously",[7] and that "It cannot then be said that the doctor's letter constitutes new information such as to bring it within the applicable Army Regulations so as to have made a *prima facie* case requiring the board to reopen his classification." 483 F.2d at 285.

■ We conclude that appellant made a *prima facie* case for psychiatric disqualification under Army Regulation 40–501, *supra*, and that this required a

---

4. There is nothing in the record to suggest that the Army questioned Dr. Reider's qualifications as a psychiatrist or the objectivity of his findings and conclusions.

5. The determination of whether appellant has presented a *prima facie* case is a proper matter for judicial inquiry. The district court concluded that such an inquiry is justified only in cases of "unusual circumstances", relying upon our decisions in United States v. Sowul, *supra*, and United States v. Shunk, 438 F.2d 1204 (9 Cir. 1971), holding that absent unusual circumstances a court is not permitted to inquire into a registrant's medical fitness. Here, however, the issue is not whether appellant is medically fit for induction, but whether AFEES followed prescribed procedures in processing appellant's claim for psychiatric disqualification. See *Wilson, supra*, 478 F.2d at 477 and *Shunk, supra*, 438 F.2d at 1204, which hold that whether there is "a deficiency in prescribed procedures" is subject to judicial inquiry. See also Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362

(1970) and United States v. Allen, *supra*, which hold that the question of whether a registrant has presented his local board with a *prima facie* case for reclassification is subject to judicial review.

6. In *Thrower* the registrant had been examined on April 23, 1969. He complained of "various ailments", including depression and nervous trouble, a drug habit, and homosexual tendencies, but did not submit a letter or other supporting evidence. He submitted the letter to his board on May 5. It was referred to AFEES, which then requested that the registrant be directed to return for a psychiatric consultation, when he was found acceptable for induction. When he reported for induction in December, 1969 his papers, including the letter, "were reviewed by AFEES and neuro-psychiatric examination * * * was administered". 483 F.2d at 284.

7. The court found that none of the doctor's findings was "at variance with, nor in addition to, the findings with regard to [his initial] preinduction physical". 483 F.2d at 285.

specific psychiatric evaluation. As in *Wilson, supra,* 478 F.2d at 478, we do not decide whether appellant is "medically disqualified from the military service". We simply hold that he made a *prima facie* case for a specific psychiatric evaluation, and that the failure to provide for that evaluation in compliance with Army Regulations requires reversal.

Reversed.

EUGENE A. WRIGHT, Circuit Judge (dissenting):

I dissent. I am not convinced that Dr. Reider's letter presents a *prima facie* case for the grant of a psychiatric disqualification, and I would yield to the AFEES examining physician's determination that it did not.